United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 08-00836 CW |
|---|---|
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL |
| v. | |
| PABLO PENALOZA ESPINO, | |
| Defendant. | |

On December 10, 1009, a jury convicted Pablo Penaloza Espino of all three counts with which he was charged: conspiracy to possess with intent to distribute and to distribute methamphetamine (count one), possession with intent to distribute and distribution of methamphetamine (count four) and possession of a firearm in furtherance of a drug trafficking crime (count five). At the close of the government's case-in-chief, Defendant orally moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court allowed the above-mentioned counts in the indictment to proceed to the jury. Defendant now moves for a judgment of acquittal as to these counts, arguing that the evidence presented did not support verdicts on these claims. Defendant also moves to vacate the judgment of conviction and for a new trial under Federal Rule of Criminal Procedure 33.

DISCUSSION

I.  Sufficient Evidence To Support The Jury Verdict

Federal Rule of Criminal Procedure 29 allows Defendant to challenge the sufficiency of the evidence underlying a conviction. The question the Court must address is whether, "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Herrera-Gonzalez</u>, 263 F.3d 1092, 1095 (9th Cir. 2001) (emphasis in original; citations and internal quotation marks omitted).

    A.    Count One: Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine

To establish a drug conspiracy, the government must prove (1) an agreement to accomplish an illegal objective and (2) the intent to commit the underlying offense. <u>United States v. Barragan</u>, 263 F.3d 919, 922 (9th Cir. 2001). The government "can prove the existence of a conspiracy through circumstantial evidence that defendants acted together in pursuit of a common illegal goal." <u>United States v. Bishop</u>, 1 F.3d 910, 911 (9th Cir. 1993) (citation omitted). "Express agreement is not required; rather, agreement may be inferred from conduct." <u>United States v. Hegwood</u>, 977 F.2d 492, 497 (9th Cir. 1992) (citation omitted). The Ninth Circuit has noted that "most conspiracy convictions are based on circumstantial evidence, and we allow juries to draw inferences as to the existence of an agreement from the defendants' conduct." <u>United States v. Iriate-Ortega</u>, 113 F.3d 1022, 1024 (9th Cir. 1997).

Here, viewing the evidence in the light most favorable to the

2

prosecution, the Court concludes that a rational trier of fact could have found the existence of a conspiracy beyond a reasonable doubt.  The evidence at trial established that Defendant conspired with Jose Juan Martinez Noriega to possess with intent to distribute and distribute two pounds of methamphetamine on November 5, 2008.

In several recorded telephone calls leading up to the November 5, 2008 transaction, Martinez Noriega told Oscar Marin, the confidential informant, that he did not have the methamphetamine and would have to get it from somebody else.  On the day of the transaction, Martinez Noriega and another individual, Israel Vences Hernandez, arrived at the parking lot of the Park & Shop in Concord at around 4:30 p.m.  The parking lot was under constant police surveillance.  Martinez Noriega repeatedly told Marin that the methamphetamine was on its way and that his supplier was stuck in traffic.  At 7:30 p.m., Martinez Noriega called Marin and stated that the methamphetamine had arrived.  At the same time Martinez Noriega called Marin, Defendant drove in the Park & Shop parking lot.

Defendant then circled the parking lot three times in an apparent attempt to conduct counter-surveillance.  Defendant parked his car next to Martinez Noriega's and then entered Martinez Noriega's car.  Martinez Noriega drove Defendant a few hundred yards through the parking lot to a new parking spot near Mimi's Café.  Defendant and Martinez Noriega exited their car and then entered Marin's car, with Defendant sitting in the back seat and Martinez Noriega sitting in the front seat.  Defendant, who was carrying a bag containing two pounds of methamphetamine, placed the

3

bag on the center console of Marin's car.  After Defendant asked Marin for the money in exchange for the drugs, a heated conversation ensued and Marin signaled to the watching police to arrest Defendant.  Police recovered a loaded nine millimeter semiautomatic handgun from the floor behind the driver's seat of Marin's car, immediately next to Defendant's feet.  Police thoroughly searched Marin and his car prior to the controlled drug transaction and no firearms or drugs were discovered.

From this evidence, and viewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could find beyond a reasonable doubt that Defendant participated in a conspiracy to possess with intent to distribute and distribute two pounds of methamphetamine.

>    B.    Count Four: Possession with Intent to Distribute and Distribution of Methamphetamine

Marin testified that Defendant carried a two-pound bag of methamphetamine into Marin's car to conduct a drug transaction. Defendant argues that Marin's testimony should be disregarded because he lacks credibility.  Although Marin's testimony was central to Defendant's conviction, the "testimony of the one witness, if believed, [is] sufficient to support [a] conviction, and the resolution of any question as to his credibility [is] properly entrusted to the jury."  United States v. Gudino, 432 F.2d 433, 434 (9th Cir. 1970).  The jury was made aware of the assistance the police have provided Marin over the years in exchange for his work as a confidential informant, including help in obtaining United States citizenship and payments totaling nearly $500,000.  In the end, the jury chose to credit his testimony.

4

Even if the jury chose not to believe Marin's testimony that Defendant carried and delivered the methamphetamine, it could have found Defendant liable for this crime under a theory of conspiracy liability. Thus, even if Martinez Noriega actually carried and delivered the methamphetamine, these actions were within the scope of and in furtherance of the conspiracy to distribute methamphetamine as discussed above. Therefore, Defendant would be liable for Martinez Noriega's actions in this regard as well. Accordingly, a rational jury could conclude that Defendant possessed with intent to distribute and distributed methamphetamine.

    C.    Count Five: Possession of a Firearm in Furtherance of a Drug Trafficking Crime

Defendant argues that he should be acquitted of this count because (1) the government offered no proof that the firearm in question was a real firearm, (2) nobody testified that they saw Defendant carry a firearm to Marin's car or discard the firearm once inside the car and (3) no fingerprint or DNA evidence linked the firearm to Defendant. As to Defendant's first argument, Special Agent Hedquist testified that he found a loaded Smith & Wesson nine millimeter semiautomatic handgun in the backseat of Marin's car. The firearm was submitted into evidence and there is no indication that the gun was a replica or a toy.

Defendant correctly notes that nobody testified that they saw Defendant carry a firearm during the transaction, nor did the government present any forensic evidence tying Defendant, or anyone, to the firearm. However, Marin and his vehicle were thoroughly searched before the controlled transaction and no

methamphetamine or firearms were found during that search.  Thus, the recovered firearm must have come from either Defendant or Martinez Noriega.  The firearm was recovered in the backseat of the car, where Defendant was the only occupant, close to Defendant's feet and in plain view.  Special Agent James Nuttal was the first officer on the scene and he testified that Martinez Noriega did not move or throw a firearm into the backseat.  Similarly, Marin testified that he did not see Martinez Noriega throw a gun into the backseat of the car.  Even if the jury believed that the gun did not belong to Defendant, under a conspiracy theory of liability, Defendant would be liable for Martinez Noriega's possession of the firearm because it was within the scope and in furtherance of the conspiracy described above.  Therefore, a rational jury could conclude that Defendant possessed a firearm in furtherance of these drug trafficking crimes.

II.  Motion for a New Trial

Under Federal Rule of Criminal Procedure 33, a district court may vacate a judgment of conviction and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33.  Defendant argues that he should receive a new trial because the read-back of Marin's testimony without cautionary instructions was prejudicial. A district court has wide discretion in responding to a jury's request for a read-back of a witness's testimony.  United States v. Sacco, 869 F.2d 499, 501 (9th Cir. 1989).

Defendant relies primarily on United States v. Richard, 504 F.3d 1109 (9th Cir. 2007).  Richard was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The jury requested playback of the entire testimony and cross-

6

examination of the only witness who was able to link Richard with a firearm. Rather than provide the entire testimony, the district court asked the jury to select the portion of the examination it wanted to hear. The portion replayed primarily consisted of the core of the government's case against Richard, the witness's courtroom identification of Richard and testimony that he possessed the gun. The excerpt omitted portions of the testimony that showed the witness's "extraordinary difficulty in identifying" Richard and the witness's entire cross-examination. Id. at 1114-15.

In Richard, the Ninth Circuit laid out guidelines for providing juries with play-back of trial testimony. First, the court stated that "it is preferable to have the testimony reheard (or reread) in open court with all parties present." Id. at 1114. Second, the court noted that "the jury should ordinarily be provided with the witness's entire testimony -- i.e., direct and cross-examination, and should be admonished to weigh all evidence and not focus on any portion of the trial." Id. (emphasis in original). Third, the court stated that "in deciding whether to allow testimony to be replayed, we have noted that a district court should consider the 'quantum of other evidence against the defendant' and 'the importance of the [testimony to be replayed] in relation to other evidence.'" Id. (quoting Sacco, 869 F.2d at 502).

The Ninth Circuit held that the manner in which the district court conducted the play-back in Richard constituted clear error. The portion of the witness's testimony that was read back "was the only evidence -- indeed, the only evidence -- directly connecting Richard to the gun. Id. at 1115. The court emphasized that

7

"despite the clearly one-sided nature of the portion to be replayed, the district court did not admonish the jury against unduly emphasizing the testimony or otherwise attempt to minimize the risk of undue emphasis.  This failure constitutes clear error . . . ."  Id.

The current case is distinguishable from Richard.  Here, although the Court did not accompany the read-back with an instruction to consider the witness's testimony in the context of all of the evidence, the Court greatly reduced the likelihood that the jury would place undue emphasis on any portion of the testimony because Marin's entire testimony was read back, and this was done in open court with all parties present.  Further, Marin's testimony was not the "only evidence" directly connecting Defendant to the drug transaction.  The entire controlled transaction was visually monitored by a team of federal agents and local police.  Under a conspiracy theory of liability, regardless of whether Defendant or his co-conspirator, Martinez Noriega, brought the methamphetamine to Marin's car, Defendant would be liable.  Therefore, the Court concludes that the interest of justice does not warrant a new trial.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for judgment of acquittal and for a new trial (Docket No. 105).

Dated: 04/19/10

CLAUDIA WILKEN
United States District Judge